483 So.2d 712 (1985)
UNIVERSITY MEDICAL CENTER, INC., Petitioner,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, and Humhosco, Inc., D/B/a Humana Hospital Northside, Respondents.
No. BA-104.
District Court of Appeal of Florida, First District.
August 20, 1985.
On Motion for Rehearing February 13, 1986.
Robert A. Weiss, Tallahassee, and Greene, Greene, Falck & Coalson, P.A., Jacksonville, for petitioner.
Douglas L. Mannheimer, of Culpepper, Turner & Mannheimer, Tallahassee, for respondent Dept. of Health and Rehabilitative Services.
John H. French, Jr. and James C. Hauser, of Messer, Rhodes & Vickers, Tallahassee, for respondent Humhosco, Inc., d/b/a Humana Hospital Northside.
William B. Wiley, Gerald B. Sternstein and Charles A. Stampelos, of McFarlain, Bobo, Sternstein, Wiley & Cassedy, P.A., Tallahassee, for Psychiatric Hospitals of America, Inc., amicus curiae.
ZEHMER, Judge.
University Medical Center, Inc. (UMC), petitions for review of a nonfinal order of an administrative hearing officer denying UMC's motion to consolidate its certificate of need (CON) case with a pending CON case involving Humhosco, Inc., doing business as Humana Hospital Northside (Humana). We accept jurisdiction and affirm.
In June 1983, Humana and HCA Health Services of Florida (HCA) each submitted a CON application to construct a general acute care hospital in north Jacksonville. This filing placed them in an HRS batching *713 cycle for which applications were due by June 15, 1983. Fla. Admin. Code Rule 10-5.08(1). Both of these applications were denied by HRS in October 1983. Humana petitioned for a section 120.57, Florida Statutes (1983), administrative hearing, but HCA's case was voluntarily dismissed.
In November 1983, two batching cycles and five months after Humana's application, UMC applied for a CON to construct a 100-bed general acute care hospital in north Jacksonville. The application was denied by HRS in April 1984, and UMC requested a section 120.57 hearing. UMC also filed a motion to consolidate its administrative hearing with the hearing in Humana's case, which had not yet been held, alleging that the applications of Humana and UMC are mutually exclusive, and "involve essentially identical issues of fact and law." The hearing officer denied the motion to consolidate without explanation. UMC then sought review of this non-final agency action pursuant to article V, section 4B, Florida Constitution, section 120.68(1), Florida Statutes (as amended by chapter 84-173, section 4, Laws of Florida), and rule 9.100, Florida Rules of Appellate Procedure.
UMC contends that consolidation of its administrative proceedings with those of Humana is consistent with the legislative intent underlying the Health Facilities and Health Services Planning Act, section 381.493, et seq., Florida Statutes (1983), because the two applications involve essentially identical issues of fact and law and consolidation would promote the just, speedy, and inexpensive resolution of the proceedings. UMC argues that a de novo comparative hearing on pending, competing, and mutually exclusive applications is mandated by the due process considerations enunciated in Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), and decisions of Florida courts applying the Ashbacker doctrine to CON cases. Biomedical Applications of Clearwater, Inc. v. Dept. of Health & Rehabilitative Services, 370 So.2d 19 (Fla.2d DCA 1979); Biomedical Applications of Ocala, Inc. v. Dept. of Health & Rehabilitative Services, 374 So.2d 88 (Fla. 1st DCA 1979); and South Broward Hospital District v. Dept. of Health & Rehabilitative Services, 385 So.2d 1094 (Fla. 4th DCA 1980). UMC recognizes that HRS has established "batching cycles" to facilitate the orderly review of applications, but contends that the batching cycle rules relate solely to the HRS review process leading to HRS's preliminary determination on the application. Nothing in rule 10-5.08, according to UMC, precludes comparative consideration of competing applications at a de novo section 120.57 administrative hearing, even if such applications were filed in different batching cycles and not considered comparatively in HRS's preliminary review. Finally, UMC states that a de novo review of CON applications is required by McDonald v. Dept. of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), and such review must take into consideration changed circumstances at the time of the hearing, including the fact that additional CON applications may have been filed.
HRS argues that the granting of consolidation to petitioner would allow it to obtain a comparative analysis of its application with Humana's and, in effect, place petitioner in the same batching cycle as Humana, in violation of rule 10-5.08(1), Florida Administrative Code. It states that the requirement of a de novo hearing at the administrative level does not override HRS's requirement that CON applications be given only comparative review with similar applications in the same batching cycle. HRS distinguishes the cases cited by petitioner on the ground that those cases deal with situations where the competing CON applicants had filed their applications at or near the same time. It points out that these prior cases were decided before adoption of its batching cycle rules and that, in fact, its rules were promulgated in response to those cases. HRS takes the position that if petitioner is allowed to prevail, HRS's attempt to establish orderly and efficient procedures for consideration of CON applications will be nullified. It contends that the United States Supreme Court in Ashbacker recognized that two *714 applications are not considered mutually exclusive if there is a batching system set up which provides that applications must be filed by a certain date in order to be comparatively reviewed. Additionally, it points out that the second district court in Biomedical Applications of Clearwater, Inc. v. Dept. of Health & Rehabilitative Services, 370 So.2d 19, 23 (Fla.2d DCA 1979), recognized that comparative review was required only for "timely filed applications."
Humana, as intervenor, argues that the issue of consolidation of administrative hearings is a matter reserved to the discretion of the hearing officer based on the particular facts and circumstances of each case. Fla.Adm.Code Rule 28-5.106. It urges that petitioner has not demonstrated that the hearing officer in this case abused his discretion by denying the motion to consolidate. Humana further points out that the construction of a statute or statutory scheme by the agency charged with its execution should be followed by the courts unless there are compelling indications that such construction is incorrect. Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla. 1982).
In reply to HRS's and Humana's arguments, UMC contends that HRS's application of the batching cycle system to administrative hearings does not further the interests of orderly and efficient administration of the CON program. It argues that consolidation of its case with Humana's would further HRS's interest in the official resolution of both applications since only one hearing would be necessary. Additionally, UMC points out that Humana was not prejudiced by petitioner's request for consolidation since petitioner did not request a continuance of Humana's final hearing and offered to facilitate a discovery schedule in furtherance of the protection of the rights of the various parties involved.
Initially, we note that the record on appeal does not contain the CON applications filed by UMC and Humana because those applications were not before the hearing officer when he considered UMC's motion to consolidate.[1] Hence, we are left without the critical facts identified in our recent opinion in Gulf Court Nursing Center v. Dept. of Health & Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), which are relevant to determining the right to comparative review. For example, there is no indication of which fixed pool of bed need, or health systems plan, is the basis of each application. Whether UMC's application is a new application or an updated application pursuant to rule 10-5.14, Florida Administrative Code, is also not shown. Without identification of these critical facts, it is not possible to determine the appropriateness of the requested comparative review and consolidation.
We recently held in Federal Property Management Corp. v. Health Care & Retirement Corp., 462 So.2d 493 (Fla. 1st DCA 1984), that where an earlier filed CON applicant is seeking, at the administrative hearing level, intervention in a case involving a later filed application for the same fixed pool, such intervention is proper under the "fundamental doctrine of fair play laid down by the Supreme Court in Ashbacker." Id. at 496. We reserved ruling, however, on the right of a later filed applicant to intervene or have its case consolidated with that of an earlier filed applicant for the same fixed pool.
In Gulf Court Nursing Center v. Dept. of Health & Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), we held that a later filed application may be entitled to comparative review with an application filed in an earlier batching cycle under the circumstances of that case. We emphasized, with respect to nursing home beds, *715 that a completed CON application must be specifically addressed to a fixed pool of need identified in an existing state health systems plan and that where the applicant asks to have its application considered in light of newly projected need identified in a health plan adopted subsequent to completion of the original application, it must update its application in accordance with Florida Administrative Code Rule 10-5.14. In the Gulf Court case Provincial House of Florida, Inc., and Beverly Enterprises, Inc., filed CON applications seeking to meet the projected need identified in the 1981 health systems plan, and ten months later Gulf Court filed a CON application seeking to meet the projected need identified in the newly adopted 1982 health systems plan. HRS first denied the application of Provincial and Beverly but later granted CON's based on the need identified in the new 1982 plan even though the applications had not been updated in accordance with rule 10-5.14. HRS denied comparative review to Gulf Court and denied Gulf Court's application solely on the basis that the 1982 need had been met by the CONs to Provincial and Beverly. We held Gulf Court was entitled to comparative review with Provincial and Beverly regarding the fixed pool in the 1982 plan and vacated the appealed orders. Because the Provincial and Beverly applications related to the 1981 plan and had not been appropriately updated or amended, we remanded the case to allow Provincial and Beverly to file amended applications related to the 1982 need and to have comparative review of those updated applications with the application timely filed by Gulf Court.
We perceive no reason to treat CON applications for general acute care hospital beds any differently than applications for nursing home beds, so the rationale of our decision in Gulf Court is equally applicable in this case. As noted earlier, the record before us does not contain the CON applications of UMC and Humana, nor is there evidence as to whether Humana's application has been considered in light of need projected in a health systems plan adopted subsequent to completion of its application. Accordingly, we are unable to determine whether UMC has a right to comparative review of its application with that of Humana giving rise to the need for consolidation. We also note, however, that since UMC chose not to file an application for a certificate of need in Humana's batching cycle, it is not entitled to comparative review with Humana as long as Humana is seeking to meet only a projected need or fixed pool incident to a plan existing at the time its application became complete.[2]
We reject the argument made by UMC that the batching cycle concept is applicable to HRS's preliminary proceedings, but not to a de novo administrative hearing designed to formulate final agency action. In order to facilitate orderly and effective consideration of certificate of need applications and to meet the fairness requirements set forth in Ashbacker and Biomedical of Clearwater, it is necessary that the batching cycle concept apply throughout the entire certificate of need proceeding. The batching cycle concept was established to provide a system whereby simultaneous or near simultaneous applicants for the same fixed pool could be comparatively reviewed. If an applicant fails to file in a particular batching cycle it thereby waives the right to comparative *716 review with those health care providers that do file an application in that batching cycle. Although we did not discuss this precise issue in Gulf Court, it is implicit in that opinion that the batching cycle rules are applicable throughout the entire administrative process. To hold otherwise would substantially defeat the effectiveness of the batching rules and would not accord with either the intent of the rules, Biomedical, or Ashbacker. We agree, as stated in McDonald v. Dept. of Banking & Finance, 346 So.2d 569, 584, that section 120.57 proceedings are not separate appellate review proceedings, but are part of the total administrative process intended to formulate final agency action. Accordingly, the batching cycle requirements are applicable throughout the administrative proceeding designed to result in final agency action.
UMC, as movant below, had the burden of producing evidence before the hearing officer sufficient to support its request for consolidation and comparative review. Withers v. Metropolitan Dade County, 290 So.2d 573 (Fla.3d DCA 1974). On appeal, UMC had the burden of demonstrating that the hearing officer reversibly erred in denying its motion for consolidation. See, Florida East Coast Railray Company v. King, 158 So.2d 523 (Fla. 1963). UMC failed to meet these burdens since it has not demonstrated that Humana is seeking a CON for the same fixed pool of projected need as UMC which was identified in a health systems plan adopted subsequent to the time Humana's application became final.
AFFIRMED.
MILLS and ERVIN, JJ., concur.

ON MOTION FOR REHEARING
University Medical Center, Inc. (UMC), has filed a motion for rehearing and/or clarification, and appellee Humhosco, Inc., d/b/a Humana Hospital Northside (Humana), has filed a motion to strike the motion for rehearing. Oral argument was held on these motions on December 3, 1985. With the following clarification of our original decision, we deny the motions.
The primary contention in UMC's motion is that we improperly relied upon statutes and rules that were not in effect at the time HRS considered the applications of UMC and Humana. We agree that our discussion of health systems agencies and health systems plans was based primarily upon a statutory and regulatory scheme that had been amended at the time the current dispute arose. Shortly before Humana and UMC sought certificates of need (CON) to construct general acute care hospitals in north Jacksonville, applicable Florida statutes and rules had been amended to eliminate health systems agencies and replace them with local health councils. § 381.494(7), Fla. Stat. (1983). The local health councils were directed to "[d]evelop a district plan, using uniform methodology as set forth by the Department, which will permit each local health council to develop goals and criteria based on unique local health needs." § 381.494(7)(b)1, Fla. Stat. (1983). We are not aware of any amendments to the correlative federal statutes.
The uniform methodology developed by HRS in rule 10-5.11(23), Florida Administrative Code, sets forth a mathematical formula for evaluating the need for new acute care hospital beds. This methodology uses statistical data from various sources, including projected population figures, to calculate a projected numerical bed need five years into the future (the "five-year planning horizon"). In the instant case HRS applied this bed need methodology and determined there was insufficient need to support the CON applications of both UMC and Humana.
The order being appealed by UMC is an interlocutory order of the hearing officer denying a motion to consolidate the pending two CON proceedings. The first proceeding involves HRS's denial of Humana's CON application submitted in June 1983. The second pending proceeding involves HRS's denial of UMC's CON application submitted in November 1983, two batching cycles after Humana's application. UMC *717 argues that it should be entitled to consolidation and comparative review with Humana because both cases happened to be pending in DOAH at the same time. They also contend on rehearing that they should be entitled to an opportunity to satisfy the standard for comparative review set forth in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, et al., 483 So.2d 700 (Fla. 1st DCA 1985).
UMC's contention misconceives the rationale of the Gulf Court decision. The key factual difference between Gulf Court and the instant case is that the Gulf Court record revealed, through stipulations of the parties, that although Provincial House and Beverly Enterprises applied for CONs in batching cycles prior to that of Gulf Court, HRS granted them CONs based upon the existence of the fixed pool of bed need for which Gulf Court has timely applied and which arose after Provincial House and Beverly Enterprise's applications were filed. In that situation, it was impermissible to award CONs to Provincial House and Beverly Enterprises without according a comparative hearing to Gulf Court.
In the present case, HRS denied the applications of both Humana and UMC. This is an interlocutory appeal of the hearing officer's order denying consolidation, and we have no way of knowing now what the ultimate outcome of each pending administrative proceeding will be. We do know that Humana and UMC applied for beds in separate batching cycles and that the record fails to establish that both applications are addressed to the same fixed pool. Since the batching cycle concept is applicable throughout the entire administrative proceeding, and since UMC filed in a later batching cycle, UMC is not entitled to comparative review with Humana absent a showing that both applications are based on the same fixed pool.
We recognize that new population figures and other changes in data may have arisen between the time of Humana's original application and the ultimate decision on such application. Whether the use of changed data and its effect on bed need methodology may give rise to a basis for consolidation or intervention by UMC in the future are matters of speculation with which we need not be presently concerned. Our affirmance is based solely on the insufficiency of the record before the hearing officer to show any right to the requested relief at the time the motion for consolidation was considered.
NOTES
[1] It seems rather obvious to us that any proceeding to grant or deny a CON application should have a copy of the application in the record. The record on appeal contains, however, a certificate from DOAH indicating that neither an application from UMC nor Humana was introduced in evidence before the hearing officer. Assuming this is true, we are at a loss to know how the hearing officer could have been expected to appropriately consider and grant the motion to consolidate.
[2] We are likewise unable to determine whether the CON application of either party is limited to a fixed pool approved in particular health plan and does not seek to establish a need in excess of that approved in the particular plan. Should the applications address a need on the latter basis, the question remains whether a CON can be granted on that basis without amending the pertinent health plan in view of the federal statutory requirement that each decision of HRS on a CON application "shall, except in emergency circumstances that pose a threat to public health, be consistent with the state health plan in effect for such State under section 300m-3(c) of this title." 42 U.S.C.A. § 300m-6(a)(5). See Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985). Since this issue and the question of whether the provisions for public hearings on CON applications set forth in section 381.494(6), Florida Statutes (1983) obviate the need for amendment of the health plan has not been argued on this appeal, we express no opinion thereon.